## ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET.

---

### GEORGE B. LAPHAM *et al. versus* THE ATLAS INSURANCE COMPANY.

Under a policy of insurance on a vessel from a foreign port " to a port of discharge in the United States," she may put into a port in the United States to inquire for a market, and may proceed thence to another port in the United States for the purpose of discharging her cargo.

A vessel insured from the West Indies " to a port of discharge in the United States," sailed from the West Indies for Savannah, for the purpose of there disposing of her cargo, and on her passage sustained some damage. She did not however discharge any part of her cargo at Savannah, but after inquiring into the state of the markets and procuring some repairs and supplies, staying only a reasonable time for those purposes, she sailed for Boston as a port of discharge. It was *held*, that she was protected by the policy on her passage from Savannah for Boston.

The vessel having taken on board at Savannah a deck load of cotton, on freight, for Boston, it was *held*, that this did not discharge the liability of the underwriters, provided it did not cause any delay in the voyage or any increase of risk.

It was *held*, that a general usage for the same species of vessels, in various kinds of navigation and in different seasons of the year, to carry deck loads, was competent evidence, in connexion with the opinions of nautical witnesses, to show that in fact the risk was not increased by carrying the cotton on deck.

It was *held*, that in determining the effect of taking the deck load of cotton, the proper question for the jury to consider was, whether on the whole the risk was increased upon a balance of the advantages and disadvantages of that proceeding.

ASSUMPSIT on a policy of insurance on the schooner Edward at and from Boston to port or ports in the West Indies, and at and thence to a port of discharge in the United States. Trial before *Shaw* C. J.

The vessel sailed from Boston to the port of Aux Cayes in

St. Domingo, thence to the port of Savannah in Georgia, and thence to Boston, and the loss alleged was occasioned by her striking the rocks and going ashore at Scituate, near the entrance of Boston harbour, on the passage from Savannah to Boston.

It was in evidence, that when the vessel arrived at Aux Cayes, the master, being unable to sell his outward and procure a homeward cargo in convenient time, determined to take in a cargo of logwood, and proceed to Savannah for the purpose of disposing of it, and if he should do so, then to return to Aux Cayes and take on board the proceeds of his original outward cargo ; that the vessel sustained some damage in her sails, on her passage from Aux Cayes to Savannah ; that on her arrival at Savannah, the master, after inquiring the state of the market, and without discharging any part of his cargo or breaking bulk, determined to proceed to Boston ; and that after procuring some repairs and supplies, he sailed accordingly.

Upon these facts it was contended by the defendants, that by the true construction of the policy, the risk terminated at Savannah, and that for any loss happening afterwards they were not responsible.

But the jury were instructed, that upon this policy the port of destination was not necessarily the port of discharge ; and that in case no part of the cargo was discharged at the port of destination, the vessel was protected by the policy in going from one port of the United States to another, if done in good faith, as a port of discharge ; and that if such was the case with the Edward, the risk continued to the time when the loss happened. To these instructions the defendants excepted.

It was further in evidence, that the vessel took on board, at Savannah, a deck load of forty bales of cotton for Boston, on freight. Thereupon it was contended, that as by the terms of the policy no port of the United States was contemplated as a loading port, the taking of this cotton on board was, 1. an alteration of the risk ; or 2. an increase of the risk ; or 3. that it occasioned a delay amounting to a deviation ; and that upon one or all of these grounds, the risk terminated at Savannah by taking the cotton.

The jury were instructed, that the master had a right, without affecting the policy, to stop a reasonable time at Savannah to obtain necessary repairs and supplies for the further prosecution of his voyage, and also to make full and extensive inquiries of the state of the market there, and form his judgment deliberately whether he would discharge his cargo there or proceed to Boston, and that a delay for these purposes, pursued in good faith and with reasonable diligence, was not a deviation; that the taking on board the deck load of cotton was not such an alteration in the risk as would necessarily discharge the underwriters, and that it would not have this effect unless it in fact increased the risk, to the injury of the underwriters, or occasioned a delay in the voyage; but that if it did in fact increase the risk, or if any delay was occasioned, either to procure the freight of cotton or to take it on board and secure it, the underwriters were discharged.

In relation to the question, whether there was an increase of the risk, by taking a deck load of cotton, several of the nautical witnesses had stated what in their opinion would be the advantages and disadvantages of that measure, considering the season of the year and other circumstances; in relation to which the jury were instructed, that the question was, whether on the whole the risk was in fact increased by taking the deck load, upon a balance of advantages and disadvantages; and that it did not vacate the policy, although it did increase the risk in one particular, if it diminished it in another in an equal or greater degree. To this instruction the defendants excepted.

In the course of the examination of nautical witnesses upon the question, whether taking the deck load of cotton increased the risk, either by rendering the vessel less stiff and less secure under a heavy press of sail, or by preventing her from holding as good a wind and making as good a course on a lee shore, or by embarrassing the operations of the vessel and exposing the men to greater danger, or otherwise, the plaintiffs proposed to ask the witnesses, whether it was usual for certain species of vessels to carry a deck load. This question was objected to by the defendants, on the ground, that as the policy did not cover a voyage from Savannah to Boston, they

Lapham
v.
Atlas
Ins. Co.

Lapham
v.
Atlas
Ins. Co.

were not bound by the usage, if one existed. But it was ruled, that to some purposes the evidence of general usage was admissible; and upon this subject the jury were instructed, that if the voyage insured had been from Savannah to Boston, the usage to take a deck load, if proved, would have been conclusive on the underwriters, because they would be presumed to have made their contract in reference to the known usage of the voyage, and to have adjusted the premium accordingly; that such usage therefore would of itself have little tendency to show that it did not increase the risk; but that in the present case the risk to the vessel, of carrying a deck load or other freight from one port in the United States to another, was not contemplated as part of the contract, nor covered by the premium, and it could be excused only on the ground that it did not in fact increase the risk, and therefore the evidence of usage was not binding or conclusive; but that if the usage of carrying a deck load upon this species of vessels, in various kinds of navigation, and in different seasons of the year, was common and general, it might lead to a belief, in connexion with the evidence of opinion, that it is considered among practical persons conversant with navigation, as no more dangerous to the vessel to carry goods on deck, than under deck, and to this extent it was competent evidence, but no further.

The questions whether the risk was increased by taking the cotton at Savannah, and whether the vessel was thereby delayed, were left to the jury upon the evidence produced on both sides.

The jury found a verdict for the plaintiffs; and upon inquiry being made, they stated that they were fully satisfied that the risk was not increased by taking the deck load of cotton from Savannah to Boston.

If, in the opinion of the whole Court, the foregoing directions, or any one of them, were wrong, a new trial was to be granted; otherwise judgment was to be rendered for the plaintiffs.

March 9th, 1833.

Fletcher and Cooke, for the defendants, insisted that the homeward voyage terminated at Savannah; that the construction put upon the policy at the trial, would enable the vessel

Lapham
v.
Atlas
Ins. Co.

to range from port to port along the whole coast of the United States, until her arrival at a port where she should actually begin to discharge her cargo, and in such case the premium would not be commensurate with the risk ; that the decision in *Coolidge* v. *Gray*, 8 Mass. R. 527, was founded upon a peculiar contract, the vessel there being intended for some port in Holland, " or *wherever else the master should deem proper*, in case he could not get into Holland," and that it did not settle a general principle which would govern the present case, where the policy is " to *a* port of discharge in the United States," that is, *one* port, or such a port as the assured may elect for the purpose of there discharging the cargo, and where it may be discharged ; *Clason* v. *Simmonds*, cited in 5 T. R. 533 ; and that the case of *King* v. *Middletown Ins. Co.* 1 Connect. R. 184, was determined upon a misapplication of the decision of *Coolidge* v. *Gray*.

Supposing that the master might lawfully go to Savannah to inquire for a market, he had no right to make that port a port of loading, and the taking of the cotton on freight put an end to the responsibility of the defendants. *Solly* v. *Whitmore*, 5 Barn. & Ald. 45.

The instruction, that the vessel had a right to stop at Savannah a reasonable time to obtain supplies for the further prosecution of the voyage, was erroneous. If she sailed from the West Indies for a port of discharge in the United States, and was not suitably provisioned for the voyage, she was unseaworthy ; and if delay was caused by obtaining stores at Savannah, it was a deviation. *Kettell* v. *Wiggin*, 13 Mass. R. 72.

The evidence of usage in respect to taking deck loads, was inadmissible. It had no tendency to show that the risk was not increased by carrying the cotton on deck. The object in taking deck loads is profit, and risk is incurred for the sake of the profit.

The jury were erroneously instructed, that the question for their consideration was, whether on the whole the risk was *increased*, on a balance of advantages and disadvantages, by taking the deck load. The inquiry should have been, whether the risk was *changed*. Suppose the loss to be occasioned by an increase of the risk in one particular, how can there be a

Lapham
*v.*
Atlas
Ins. Co.

set-off of a diminution of risk in another particular ? 1 Phillips on Ins. 180, 181, 202, 203 ; *Maryland Ins. Co.* v. *Le Roy*, 7 Cranch, 28 ; *Hughes* v. *Union Ins. Co.* 3 Wheat. 159, 166 ; *Hartley* v. *Buggin*, 2 Park on Ins. (7th edit.) 469.

C. G. *Loring, contrà,* on the point that the voyage was not terminated at Savannah, relied on *Coolidge* v. *Gray*, 8 Mass. R. 527 ; *King* v. *Middletown Ins. Co.* 1 Connect. R. 184 ; *Ellery* v. *New England Ins. Co.* 8 Pick. 14.

He cited to the point, that the master was justified in taking the cotton on board, *Raine* v. *Bell*, 9 East, 194 ; *Laroche* v. *Oswin*, 12 East, 131 ; *Chase* v. *Eagle Ins. Co.* 5 Pick. 51.

That the master had a right to stay at Savannah a reasonable time for supplies, *King* v. *Middletown Ins. Co.* 1 Connect, R. 184 ; *Coolidge* v. *Gray*, 8 Mass. R. 527 ; *Urquhart* v. *Barnard*, 1 Taunt. 455.

That the jury were rightly instructed, that they were to consider whether the risk was *increased*, upon a balance of advantages and disadvantages, by taking the deck load, *Chase v. Eagle Ins. Co.* 5 Pick. 51 ; *Raine* v. *Bell*, 9 East, 195 ; *Laroche* v. *Oswin*, 12 East, 131 ; *Thorndike* v. *Bordman*, 4 Pick. 471 ; 1 Phillips on Ins. 191.

*March 18th,*
1833.

*Per Curiam.* The defendants contend that the voyage was terminated at Savannah ; and the first question to be considered is, whether that port was "a port of discharge in the United States," according to the true construction of the policy. And in determining the question we are aided by decisions of this Court and of other courts, cited by the counsel for the plaintiffs. The authority upon which they principally rely, is the case of *Coolidge* v. *Gray*, 8 Mass. R. 527. There, goods on board a vessel were insured from Boston to her port of discharge in Europe. The policy stated, that the vessel, though cleared for Tonningen, was intended for some port in Holland, or wherever else the master should deem proper, in case he could not get into Holland. The master entered the river Maese, but being informed that his vessel and cargo, if discovered by the French guards, would be seized and confiscated, he left the river and went to Gottenburg, where he remained a few days, in order to ascertain at what port he might sell his cargo, and he then proceeded for a market in

the Baltic, and was captured. It was made a question, whether Gottenburg was not the port of discharge ; but it was held, that the master had a right to obtain advice, at his port of arrival, respecting the markets, and having informed himself, to proceed elsewhere, and that the underwriters were answerable for the loss. The Court there say, that if the master had broken bulk or begun to unlade at Gottenburg, that must have been deemed the port of discharge. It is difficult to distinguish between the case referred to and the one now before us. That case has never been questioned, we believe, but it has been frequently discussed, and its principles adopted in other States. *King* v. *Middletown Ins. Co.* 1 Connect. R. 184 ; *King* v. *Hartford Ins. Co.* 1 Connect. R. 333 ; *Sage* v. *Middletown Ins. Co.* 1 Connect. R. 239. We think, then, upon the true construction of the policy now in question, that the voyage did not terminate at Savannah, and that the master had a right to proceed to another port, and that the loss is within the policy.

It appears that while the vessel was at Savannah, the master took on board forty bales of cotton on freight ; and this, it is urged, released the defendants from their responsibility. But it has been settled by this Court, that the mere fact of putting goods on board a vessel at a port where she has a right to touch, if it neither increase the risk nor occasion delay, does not discharge the underwriters. *Thorndike* v. *Bordman*, 4 Pick. 471 ; *Chase* v. *Eagle Ins. Co.* 5 Pick. 51. The questions whether the risk was increased, and whether any delay was occasioned by procuring and taking on board the cotton, were rightly left to the jury, and they have found for the plaintiffs.

The circumstance of carrying the cotton on deck, if it did not increase the risk, would not of itself avoid the policy. Many witnesses were examined in regard to the effect of a deck load, upon the safety of the vessel, and evidence was introduced that it was customary for this species of vessels, in various kinds of navigation and at different seasons of the year, to carry goods on deck. This evidence was objected to by the defendants. The usage was not admitted in evidence for the purpose of giving a construction to the contract. In

Lapham
v.
Atlas
Ins. Co.

that view it would have been competent, if the contract had been made in reference to it. But it was introduced merely as to the question, whether in point of fact the risk was or was not increased by taking the cotton on deck. It does not seem to have been very material, but we cannot perceive that it was altogether irrelevant. We are of opinion that it was not in competent evidence.

The defendants further objected, that the jury were in structed 'to consider, whether on the whole the risk was increased by taking the deck load, upon a balance of advantages and disadvantages. We think the language of the instruction was incapable of being misunderstood by the jury, and that it was substantially right. The counsel for the defendants have animadverted upon the use of the word *increased*, and have argued that if the risk is *changed*, the underwriters are dis-charged. This view of the subject, however, is too limited, for any alteration in the cargo may be said to change the risk in some degree. But the real question was, whether the vessel was practically exposed to greater danger than if the cotton had not been taken on deck.

*Judgment on the verdict.*